IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTIE MARTIN CRANE                                              PLAINTIFF

V.                                                      CIVIL ACTION NO. 1:17-CV-51-DAS

COMMISSIONER OF SOCIAL SECURITY                         DEFENDANT

MEMORANDUM OPINION

Christie Martin Crane has appealed the decision of the Social Security Administration denying her application for Social Security disability or SSI benefits. She filed applications seeking benefits on March 21, 2013, alleging onset of disability on September 25, 2008.

STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162,

164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. The court must however, in spite of its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

## THE ALJ'S DECISION

In the decision denying benefits, the ALJ found that the claimant had not engaged in substantial gainful activity since her alleged date of onset. At Step Two, the ALJ found Crane had the following severe impairments: hypertension, fibromyalgia, carpal tunnel syndrome, complications of chronic kidney disease, post-traumatic stress syndrome, anxiety and depression. He found that Crane's post-traumatic stress disorder, depression and anxiety caused her moderate restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, but that she had no episodes of decompensation.

The ALJ found that the claimant's alleged complications from gall bladder surgery in

April 2013, did not cause more than minimal functional restrictions and it was not a severe restriction. While the plaintiff alleged degenerative disk disease, the ALJ found that x-rays showed only minor abnormalities and that the records did not indicate any abnormal gait or limited range of motion in the lower extremities. He, therefore, found her alleged back problems were not severe. He also found that her ADHD was not a severe impairment because it did not impose any restrictions on her activities of daily living or social functioning and only mild difficulties in maintaining concentration, persistence and pace.

The ALJ found that the plaintiff had the residual functional capacity to perform a full range of light work, with some restrictions. She can frequently handle, finger and feel with both of her upper extremities. He found that she could never climb ladders, ropes or scaffolds, but could occasionally balance, stoop, crouch, kneel or crawl. Crane can maintain concentration for two hours at a time in an eight hour day. He found that Crane was limited to understanding, remembering and carrying out simple instructions and performing simple, routine repetitive tasks. She could maintain concentration for two hours at time and could occasionally interact with coworkers and supervisors but never with the public. Crane was also found to be able to adapt to simple, infrequent and gradually introduced changes in the work place.

The ALJ found that Crane's residual functional capacity would allow her to return to past relevant work as a cushion gluer based on the testimony of the vocational expert at Step Four. The ALJ accepted the VE's testimony that Crane could also work as a warehouse checker, laundry folder and a production inspector. He found that she was not disabled through the date of the decision.

ANALYSIS

The plaintiff's primary complaint is that the ALJ failed to evaluate the evidence properly. Her arguments appear to be centered on the determination of her residual functional capacity and the consideration of the medical records of a treating physician. She also points out assorted alleged errors in her medical records and includes questions about parts of the decision she cannot understand, apparently asking if there has been an error. The court considers these areas of concern separately.

1. Does Substantial Evidence Support the ALJ's RFC Determination

The ALJ found that Crane could perform a range of light work with certain restrictions and limitations. Consistent with the definition of light work, he found that Crane could lift, carry, push and pull twenty pounds occasionally and ten pounds frequently and that she could stand and/or walk for six hours and can sit for six hours in an eight hour day. He found that she could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, crouch, knee or crawl. He found she could frequently handle, finger and feel with her hands. While there is evidence, which if accepted by the ALJ would justify a more restrictive RFC, this court may only reverse if there is no substantial evidence to support this physical RFC. The medical source statement of Dr. Bullwinkel, a consultative examiner, found that Crane could perform light work, limiting her to occasionally climbing, balancing, stooping, crouch and kneeling. He found that she had no manipulative or environmental limitations. While Dr. Fabianke diagnosed Crane with carpal tunnel syndrome in both hands, his records do not include any functional limitations. While Crane testified to substantial

limitations secondary to the carpal tunnel syndrome, the ALJ resolve the conflict in the evidence and accepted Bullwinkel's findings. The physical RFC is supported by substantial evidence.

The ALJ found that the plaintiff could understand, remember and carry out simple instructions and perform simple, routine and repetitive tasks. She can concentrate for two hours at a time during an eight hour workday. She can interact with supervisors and co-workers occasionally, but never with the public. He also found that Crane would be limited to a work environment with only simple, infrequent and gradually introduced changes to the workplace or work processes. This portion of the RFC is supported by the opinions of Dr. Masur who conducted a mental status evaluation. He found that Crane could do routine repetitive tasks, interact productively with supervisors and co-workers and could understand, remember and carry out instructions. Dr. Prosser found, based on a review of Crane's records, that she had moderate difficulties in maintaining concentration, persistence and pace, but that she could maintain attention and concentration for two hour periods. While there is other evidence that would support a different mental RFC, the court must recognize that the opinions of these two mental health specialists is substantial evidence to support the ALJ's finding and affirm this part of the decision.

2. <u>Consideration of the Medical Records from Dr. Fabianke</u>

Crane alleges that the ALJ failed to consider the medical records of one of her treating physicians, Dr. Fabianke, alleging that the ALJ determined that the handwritten records were illegible and failed to consider them. The plaintiff has attached pages from the transcript which do state that the records are illegible, but this was a brief from plaintiff's attorney who appeared

at the administrative level. Nothing in the hearing record indicates that the ALJ deemed these records illegible and the ALJ's decision repeatedly states that he has considered all the medical records. Additionally the decision specifically references this doctor's treatment records, his diagnosis and treatment of the plaintiff, including her carpal tunnel syndrome. The court finds there was no error in the consideration of these medical records.

    3. <u>Miscellaneous Issues</u>

The plaintiff points to multiple items in the record to suggest that there is a factual or other error. She points out that fibromyalgia is a chronic disease and that Dr. Fabianke's medical records establish a long course of treatment. Apparently the plaintiff thinks that the ALJ's reference to the durational requirements for qualifying for benefits may indicate that he has found that she failed to meet that durational requirement. To the contrary, it appears that the ALJ recognized and referenced the long course of treatment, and found that her fibromyalgia was a severe impairment at Step Two. The ALJ denied benefits, not because this condition and others were not sufficiently long-lasting, but rather because he found that Crane, though suffering from some limitations as a result of her fibromyalgia and other impairments, was still able to perform certain jobs existing in the national economy.

The plaintiff claims that notations in her medical records are factually inaccurate in claiming that she denied suffering from heartburn, abdominal pain, ringing in her ears, and musculoskeletal or neurological symptoms   Any inaccuracy that may have occurred in her medical records needed to be addressed with the ALJ and this court cannot correct any such

error. In any event this court does not find that any such errors were material to the ALJ's decision to deny benefits.

Crane points to the records of an upper gastrointestinal endoscopy and tells the court that she is still taking medication that does not prevent flare ups of symptoms. Because this court is acting as an appellate court, and not as a finder of fact, it may not consider information provided outside of the administrative record.

Plaintiff points out that her medical records from the Iuka Clinic record erroneously indicate she worked full time from January 2014 to January 2015. Fortunately, this error did not impact the final decision. The ALJ considered the question of whether the plaintiff was working at Step One and found that she had not engaged in substantial gainful activity since her alleged date of onset.

Crane also voices understandable confusion about the finding that she is able to sustain concentration for a two hour period, but can work an eight hour day. This two hour limitation on maintaining concentration is sufficient for full time work because typical morning and afternoon work breaks and lunch breaks mean that workers do not typically have to be able to maintain concentration for more than a two hour interval at any one time during a typical eight hour day. Therefore there is no inconsistency between these two findings.

The plaintiff also questions the testimony of the vocational expert and the ALJ's determination that she could return to her past work as a cushion gluer. The plaintiff claims that this job was very rough on her hands, suggesting that her carpal tunnel syndrome would make it impossible for her to perform this job. The ALJ propounded to different hypotheticals to the

vocational expert regarding the ability to handle, finger and feel.  In response to the hypothetical limiting handling, fingering or feeling to occasional, the VE testified that the limitation would leave the person unable be able to perform this work, but he ultimately decided that Crane had the ability to frequently handle, finger and feel.  Under this alternate hypothetical, the vocational expert found that Crane could perform this past job.  Additionally, even if there was any error at Step Four, it would be harmless error because the vocational expert testified and the ALJ found at Step Five that there were other jobs in the national economy that Crane could perform.

## CONCLUSION

Having considered the errors asserted by the plaintiff, the arguments of the parties in their briefs, and having reviewed the record in this action, the court finds that there is no reversible error.  The court affirms the decision of the Commissioner of the Social Security Administration.

A separate judgment in accordance with this memorandum opinion shall be entered.

THIS the 23rd  day of May, 2018.

/s/ David A. Sanders  
UNITED STATES MAGISTRATE JUDGE